UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jonathan Jekel | Dennis Levasseur |

**Proceedings:**     DEFENDANT'S MOTION TO DISMISS (Filed September 21, 2016, Dkt. 22)

## I. INTRODUCTION AND PROCEDURAL HISTORY

On June 15, 2016, Volks USA, Inc. ("Volks") filed this action against A2 Hosting Inc. ("A2"). On September 1, 2016, plaintiff filed the operative First Amended Complaint ("FAC") alleging eleven claims against A2, namely, (1) false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) false advertising pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (3) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a) et seq.; (4) computer crimes pursuant to Cal. Penal Code § 502; (5) unfair competition pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6) breach of contract; (7) breach of warranty; (8) negligence; (9) trespass to chattels; (10) negligent misrepresentation; and (11) tortious interference with prospective economic advantage. The gravamen of plaintiff's complaint is that defendant improperly accessed and deleted data from a computer relating to an online store operated by plaintiff.

On September 21, 2016, defendant filed a motion to dismiss the FAC. Dkt. 22. On October 3, 2016, plaintiff filed an opposition. Dkt. 23. On October 11, defendant filed a reply in support of its motion to dismiss. Dkt. 25. On October 24, 2016, the Court held oral argument in the above captioned motion, but directed the parties' arguments principally to defendant's then-pending motion to transfer this action. Thereafter, the Court took the instant motion under submission. Dkt. 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

On November 16, 2016, the Court issued a partial ruling on the instant motion, ruling that the parties entered into an enforceable agreement ("the Terms of Service" or "TOS") whereby disputes would be governed by Michigan law. The Court also concluded that plaintiff's claims fell within the scope of the TOS because data migration, at issue in all of plaintiff's claims, is a "Service" contemplated by the TOS. Dkt. 29.

The Court ordered supplemental briefing from the parties regarding how the Court's ruling with regard to the choice-of-law provision in the TOS and the scope of the TOS impacted plaintiff's remaining allegations. On December 5, 2016, plaintiff filed a supplemental opposition to the motion to dismiss. Dkt. 30. On December 12, 2016, defendant filed a supplemental reply. Dkt. 32.

Having carefully considered the parties' arguments, the Court rules as follows.

**II. BACKGROUND**

Volks, Inc. is a Japanese corporation that manufactures specialized toys. FAC ¶ 8. Plaintiff is a California corporation and subsidiary of Volks, Inc. with its principal place of business in the Central District of California. Id. ¶ 1. Plaintiff operates two websites, namely, www.volksusastore.com and www.volksusa.com. Id. ¶ 9. In order for a website to function, the data associated with the website must be stored, or hosted, on a server connected to the internet. Beginning in January 2014, plaintiff's two websites were hosted by Caspian Services ("Caspian"), a business located in California.

In late 2015, plaintiff decided to undertake a substantial overhaul of its web store, www.volksusastore.com, and seek web hosting services from a new company. Id. ¶¶ 6, 9. While plaintiff upgraded its web hosting services, plaintiff planned to maintain its existing hosting agreement with Caspian so that it would have a backup copy of its website data and services relating to both of its web urls. Id. ¶ 9. Plaintiff selected A2 for its new web hosting needs.

A2 is a Michigan Corporation with its headquarters and principal place of business in the Eastern District of Michigan. Plaintiff alleges that it was attracted to contract with A2 because of A2's marketing and "money back guarantee." Id. ¶ 16. Plaintiff executed a web hosting contract through A2's website, id. ¶ 19, and, while checking out, checked a box acknowledging, "I have read and agree to the Terms of Service," id. ¶ 20. Although

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

plaintiff appears to acknowledge that it marked the aforementioned box, plaintiff alleges that it did not read the TOS prior to executing its contract for hosting services from A2. Id. ¶ 22.

 The TOS contains a number of provisions relevant to the instant motion.  The TOS governs defendant's performance of certain "Services."  On November 16, 2016, the Court ruled that data migration akin the that alleged by plaintiff in the FAC is a "service" within the scope of the TOS.  The TOS contains a choice-of-law provision, which provides:

> The validity, interpretation, and performance of this TOS, and of the agreements and policies that apply to the Services, shall be controlled by and construed under the laws of the State of Michigan, United States of America, as if performed wholly within the state and without giving effect to the principles of conflicts of law.

FAC Ex. 10 ("TOS") § 18.  On November 16, 2016, the Court ruled that the foregoing choice-of-law provision requires the application of Michigan law to this action.  The TOS also contains an exculpatory clause:

> You acknowledge that it is your responsibility to keep back-up copies of your data. A2 Hosting is *not responsible for any loss of data*, for any reason. A2 Hosting is not liable for unauthorized access to, or any corruption, erasure, theft, destruction, alteration or inadvertent disclosure of, data, information or content, transmitted, received, or stored on its network.

TOS § 13 (emphasis added).  Finally, the TOS contains a warranty disclaimer that provides:

> THE SERVICES ARE PROVIDED ON AN AS-IS AND AS-AVAILABLE BASIS. OTHER THAN AS EXPRESSLY SET OUT HEREIN, A2 HOSTING HAS NOT, AND DOES NOT, MAKE ANY WARRANTIES WHETHER EXPRESS OR IMPLIED.  THIS DISCLAIMER INCLUDES, BUT IS NOT LIMITED TO THE WARRANTIES OF NONINFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES OF MERCHANTABILITY, AND TITLE.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

TOS § 12.

On March 4, 2016, plaintiff contacted defendant about copying data from Caspian servers onto defendant's servers. Plaintiff alleges that its request was limited to data relating to the www.volksusa.com website and that it did not "authorize or request any services for the web store [www.volksusastore.com]." Id. ¶ 34. Plaintiff alleges that on March 5, 2016, defendant agreed to perform the requested task and that defendant did perform said copying. Id. ¶ 40.

However, plaintiff alleges that defendant *also* improperly accessed and deleted data on Caspian servers relating to www.volksusastore.com, effectively destroying the data supporting plaintiff's web store. Id. ¶¶ 45, 49. Plaintiff alleges that the destruction of its web store data has caused it to lose sales, damaged its reputation, and destroyed substantial investments it had made to improve its web store interface.

### III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.     DISCUSSION

Much of plaintiff's supplemental opposition to the motion to dismiss is in the nature of a motion for reconsideration of the Court's November 16, 2016 ruling with regard to scope of the TOS. Accordingly, the Court begins by summarizing what has already been decided and whether reconsideration of its prior order is appropriate. Thereafter the Court will evaluate the effect of the exculpatory clause of the TOS upon plaintiff's claims. Finally, the Court evaluates plaintiff's remaining claims.

### A.     The Scope and Application of the TOS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

On November 16, 2016, the Court ruled that the choice of law provision of the TOS is enforceable and that Michigan law governs this action. See Dkt. 29. The Court further ruled that migration of data from Caspian servers to defendant's servers is a "Service" within the meaning of the TOS. Accordingly, the Court observed that plaintiff's statutory claims alleging violations of California law are "appropriately dismissed." Id. (citing Abat v. Chase Bank USA, N.A., 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010). The Court ordered supplemental briefing regarding whether plaintiff has nonetheless stated a claim pursuant to Federal or Michigan law and what impact the TOS's exculpatory clauses may have on plaintiff's remaining claims.

### 1. Discovery Regarding the Interpretation of the TOS

The Court has already ruled as to the proper interpretation of the TOS. Nonetheless, plaintiff argues that it should be permitted to conduct discovery regarding the TOS prior to said ruling because "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence." Suppl. Opp'n at 4 (quoting Wolf v. Superior Court, 114 Cal.App.4th 1343, 1351 (2004)).

As an initial matter, already discussed at length in the Court's prior order, plaintiff's reliance upon California caselaw is inapposite. The interpretation of the TOS is governed by Michigan law pursuant to the choice-of-law provision in the TOS. There does not appear to be any basis for reconsideration of the Court's prior ruling that the choice-of-law provision is enforceable, nor does plaintiff seek its reconsideration here. Accordingly, interpretation of the TOS is governed by Michigan Law.

"Only when contract language is ambiguous does its meaning become a question of fact." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 544 (6th Cir. 2007) (quoting Coates v. Bastian Bros., Inc., 276 Mich.App. 498, 503-504 (2007)). In its prior ruling, the Court concluded that the TOS unambiguously applies to data transfer for migration of data. Dkt. 29 at 15-16. The Court based its ruling upon the undisputed contents of defendant's website in December 2015 and the language of the TOS. The Court construed the TOS in light of an exhibit offered by defendant listing data migration among defendant's services at the time plaintiff agreed to the TOS. See Dkt. 25-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

Although plaintiff does not appear to contest the content of the aforementioned exhibit, plaintiff now argues that it is irrelevant because plaintiff did not purchase any of the specific hosting plans listed in that exhibit. However, the Court's prior ruling was not predicated upon which hosting services plaintiff purportedly purchased. Instead, the Court interpreted the TOS's terms as a matter of law. The TOS unambiguously incorporates <u>all services</u> listed on A2's webpage. "Michigan law holds that where one writing refers to another, the two shall be construed together." <u>Jenkins v. U.S.A. Foods, Inc.</u>, 912 F. Supp. 969, 971 (E.D. Mich. 1996). Accordingly, the TOS is properly construed in light of all the services listed on defendant's webpage. Plaintiff does not contest that data migration was listed on defendant's website when plaintiff agreed to the TOS.[1] Accordingly, plaintiff does not demonstrate that reconsideration of the Court's prior ruling is appropriate.

### 2. Plaintiff's Claims Arising Under California Statutory Law

In its prior order, the Court concluded that plaintiff's claims based upon California statutory law should be dismissed because of the choice-of-law provisions in the TOS. The FAC contains claims pursuant to the UCL, FAL, and California Penal Code section 502. Plaintiff's supplemental opposition does not contest the dismissal of plaintiff's claim for violation of section 502. Plaintiff's claim for violation of section 502 is hereby **DISMISSED**.

In plaintiff's supplemental opposition, plaintiff argues that its UCL and FAL claims should not be dismissed because they are based upon defendant's advertising that

---

[1] In its supplemental opposition, plaintiff offers yet another page from defendant's website. Dkt. 30, Jekel Decl. Ex. 1. Plaintiff argues that said exhibit is a copy of A2's webpage regarding the "Dedicated Server Hosting" purchased by plaintiff. According to plaintiff it should govern what "Services" means within the TOS. As already discussed, the interpretation of the TOS does not depend in any way upon which service was purchased by plaintiff because the TOS unambiguously applies to all services listed on defendant's webpage. However, the Court's ruling regarding the scope of the TOS finds further support in the new exhibit offered by plaintiff. Although the language of plaintiff's new exhibit is not as unambiguous as the language elsewhere on defendant's webpage, <u>see</u> Dkt. 25-1, the bottom of plaintiff's newly offered exhibit nonetheless states that "data transfer" is a resource available to purchasers of a dedicated server.

Case 2:16-cv-04277-CAS-E   Document 33   Filed 12/19/16   Page 8 of 20   Page ID #:706

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

existed before plaintiff purchased services and agreed to the TOS. Plaintiff raised the same argument in its initial opposition. It is without merit.

The TOS provides that the "'Effective Date' of this TOS will be the day on which we receive payment from you. This TOS will begin on the Effective Date and continue for the term set out on the page describing the Services." TOS § 3. Plaintiff's claims for violation of the UCL and FAL are based upon an alleged "risk free," "Money Back Guarantee" advertised by defendant on its webpage. FAC ¶ 61. Plaintiff alleges that defendant advertised "ultra-reliable servers" and a "knowledgeable support team." Id. ¶ 65. However, plaintiff allegedly relied upon misleading advertising at the time it agreed to the TOS and when it later sought to transfer data onto defendant's servers. Both acts in reliance occurred on or after the effective date of the TOS. Additionally, all of the injury alleged by plaintiff arises from the alleged deletion of plaintiff's data in March 2016, after the term of the TOS began.

Courts regularly dismiss UCL and FAL claims like those raised here where the parties agreed to a choice-of-provision taking effect after plaintiff first saw the alleged advertisements. See Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (choice-of-law provision requires dismissal of UCL, FAL, and CLRA claims based on advertising that preceded choice-of-law agreement); Abat v. Chase Bank USA, N.A., 738 F. Supp. 2d 1093, 1095 (C.D. Cal. 2010) (dismissing CLRA claim based on advertising because it "concern[ed]" an agreement containing a choice-of-law provision); Medimatch, Inc. v. Lucent Techs. Inc., 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (dismissing UCL claim based on false advertising of product because product purchase agreement contained choice-of-law provision mandating application of New Jersey law); Century 21 Real Estate LLC v. All Prof'l Realty, Inc., 600 F. App'x 502, 504 (9th Cir. 2015) (affirming the dismissal of a UCL claim on the basis of a choice-of-law provision).

Accordingly, there is no basis for reconsideration of the Court's prior order. Plaintiff's UCL and FAL claims are **DISMISSED**.

### B.     The Exculpatory Clause of the TOS

The Court requested supplemental briefing regarding the effect, if any, of the TOS's exculpatory clause. The TOS contains a "Limitation of Liability" clause, which provides, in pertinent part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

> You acknowledge that it is your responsibility to keep back-up copies of your data. A2 Hosting *is not responsible for any loss of data, for any reason*. A2 Hosting is not liable for *unauthorized access to, or any corruption, erasure, theft, destruction, alteration or inadvertent disclosure of, data,* information or content, transmitted, received, or stored on its network.
>
> . . . YOU AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU WILL NOT UNDER ANY CIRCUMSTANCES INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, HOLD A2 HOSTING . . . LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, COST SAVINGS, REVENUE, BUSINESS, DATA OR USE, OR ANY OTHER PECUNIARY LOSS BY YOU . . . . YOU AGREE THAT THE FOREGOING LIMITATIONS APPLY WHETHER IN AN ACTION IN CONTRACT OR TORT OR ANY OTHER LEGAL THEORY.

TOS § 13 (emphasis added).

Defendant asserts that the TOS "is Dispositive of All Plaintiff's Claims." However, defendant cites no authority for its contention that the exculpatory clause above is enforceable and provides an absolute defense to all liability potentially arising from plaintiff's claims. Plaintiff argues that the exculpatory clause of the TOS is unconscionable and therefore unenforceable. Opp'n at 7 (citing Allen v. Michigan Bell Tel. Co., 171 N.W.2d 689 (Mich. App. 1969)). Additionally, plaintiff argues that Michigan law prohibits parties from contracting to avoid liability for gross negligence or intentional wrongs. Id. (citing Universal Gym Equipment v. Vic Tanny International, 526 N.W.2d 5 (Mich. App. 1994), vacated in part, 531 N.W.2d 719 (Mich App. 1995).

To determine whether a disclaimer of liability is unconscionable, the court must engage in "two inquiries," namely "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" Allen, 171 N.W.2d 689, 692. In Allen, the plaintiff contracted to advertise in a telephone directory operated by Michigan Bell Telephone Company. Id. at 690. After the Michigan Bell

Case 2:16-cv-04277-CAS-E Document 33 Filed 12/19/16 Page 10 of 20 Page ID #:708

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

failed to publish plaintiff's listing, plaintiff filed suit alleging several forms of damages. Id. Michigan Bell asserted that the parties' agreement was subject to a disclaimer of liability in the purchasing agreement which precluded any liability beyond the parties' agreed price for advertising. Id. The Michigan court held that the disclaimer of liability was unenforceable because it was both procedurally and substantively unconscionable. The court concluded that the disclaimer of liability was substantively unconscionable merely because "[i]t relieves the defendant from all liability" beyond Michigan Bell's obligation to return plaintiff's contract fee. Id. at 694. The court concluded that the disclaimer was procedurally unconscionable because plaintiff had no place else to turn for such advertising (there was only one telephone directory in the Flint area where plaintiff lived). Id. at 693. The fact that there was only one telephone listing meant that plaintiff lacked any bargaining power with respect to Michigan Bell's "take it or leave it" purchase agreement. Id.

The exculpatory clause at issue here is analogous to that in Allen. It is therefore substantively unconscionable. However, the parties' agreement to the TOS was not procedurally unconscionable. Plaintiff does not allege or demonstrate that it was without other options for hosting services. On the contrary, plaintiff alleges that it was choosing among numerous companies in competition with defendant. FAC ¶ 14 ("Plaintiff looked into other options for hosting services, and was drawn to Defendant"). Under Michigan law and the circumstances presented here, the exculpatory clause of the TOS is not procedurally unconscionable. See Pichey v. Ameritech Interactive Media Servs., Inc., 421 F. Supp. 2d 1038, 1047 (W.D. Mich. 2006) (sales agreement exculpatory clause was not procedurally unconscionable where "it is undisputed that the internet hosting . . . services purchased by Plaintiffs from [defendant] were available from many sources"). Accordingly, the exculpatory clause of the TOS is enforceable.

However, defendant's disclaimer of liability is nonetheless limited. Plaintiff is correct that, under Michigan law, parties cannot contract around intentional torts or liability arising out of gross negligence. See Universal Gym Equipment, 526 N.W.2d 5 (Although a release of liability "is enforceable in cases of ordinary negligence," a pre-injury disclaimer cannot "absolv[e] a party from liability for grossly negligent conduct"). Thus the exculpatory clause of the TOS is enforceable as an absolute defense against claims for negligence, but not for intentional torts. The Court with address the effects of the exculpatory clause with respect to the appropriate claims below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

### C. Plaintiff's Remaining Claims

#### 1. False Advertising in Violation of the Lanham Act

Defendant argues that plaintiff fails to state a claim for false advertising in violation of the Lanham Act because plaintiff does not allege facts demonstrating the plaintiff has standing to bring a claim under the Lanham Act. Plaintiff argues that it has been injured by the loss of sales through its website and injury to its commercial reputation such that it has standing to bring a claim under the Lanham Act. The parties' disagreement stems from their conflicting interpretations of the Supreme Court decision in Lexmark International, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014).

In Lexmark, the Supreme Court set forth the appropriate standard by which to determine whether or not a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under [15 U.S.C.] § 1125(a). In other words, we ask whether [plaintiff] has a cause of action under the statute."[22] 134 S.Ct. at 1387. The Lanham Act provides, in pertinent part, that "[t]he intent of this chapter is to regulate commerce within the control of Congress . . . [and] to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Prior to Lexmark, the Ninth Circuit had adopted a "categorical test, permitting Lanham Act suits only by an *actual competitor*." Lexmark, 134 S.Ct. at 1385 (emphasis added). However, Lexmark held that the proper test was a "zone of interests" test.

> [T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question. Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.

---

[22] Although the Court stated that neither label was quite appropriate, the Court acknowledged referring to this question at various times as one of "prudential standing" or "statutory standing." Id.

Case 2:16-cv-04277-CAS-E Document 33 Filed 12/19/16 Page 12 of 20 Page ID #:710

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

Id. at 1390 (citations omitted). Based upon that test, the Court concluded that Static Control's claim fell within the zone of interests protected by the Lanham Act, reasoning that it alleged the aforementioned types of injuries and "is suing not as a deceived consumer, but as a 'person engaged in' 'commerce within the control of Congress' whose position in the marketplace has been damaged by Lexmark's false advertising." Id. at 1393.

     Plaintiff argues that it has alleged "an injury to a commercial interest in reputation or sales," as required by the holding in Lexmark and that it is suing as an entity engaged in commerce. Defendant argues that plaintiff is suing "as a deceived consumer," bringing a claim based upon its purchase of an allegedly defective service. Defendant is correct.

     The dispute underlying Lexmark related to the handling of printer ink cartridges manufactured by Lexmark, but refurbished and resold by Lexmark competitors. Lexmark, a printer and ink cartridge manufacturer, brought suit against Static Control, a manufacturer of "the components necessary to remanufacture Lexmark cartridges." Id. at 1384. Lexmark had instituted a "prebate" policy, under which it would offer discounts on ink cartridges if consumers agreed to return the empty cartridges to Lexmark so that they could not be remanufactured by Lexmark competitors. Id. at 1383. Static Control brought a counterclaim against Lexmark alleging false advertising in violation of the Lanham Act. Static Control's Lanham Act counterclaim alleged that Lexmark, pursuant to its prebate policy, purposefully misled consumers to believe they were required to return ink cartridges to Lexmark. Id. at 1384. Static Control further alleged that Lexmark had sent letters to "'most of the companies in the toner cartridge remanufacturing business' falsely advising those companies that it was illegal to . . . use Static Control's products to refurbish [Lexmark's ink] cartridges." Id. Static Control alleged that Lexmark's statements diverted sales from Static Control and injured its reputation by leading consumers to believe it was engaged in illegal conduct. Id. The Court concluded that said claim fell within the zone-of-interests protected by the Lanham Act.

     Plaintiff here is a company that manufactures and sells toys and hobby materials. Defendant is a company that sells internet hosting services and other support for online businesses. The parties are not in competition with one another in the ordinary sense of the word, nor, as in Lexmark, are they vying for interrelated business. The only allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

misleading advertising in this case are A2's statements about its own products and services, not, as in Lexmark, statements about plaintiff's company, business, or products.

Plaintiff alleges that it was dissatisfied with the services offered by A2 because A2 allegedly deleted its only backup of critical data for its web store. Plaintiff's injury is analogous to that of any consumer bringing a false advertising claim because it purchased a service that failed to meet advertised standards. The fact that plaintiff is a company and that it alleges an injury to its reputation does not alone mean that it falls within the realm of plaintiffs who may bring claims pursuant to the Lanham Act. The consensus of "every Circuit to consider the question" is that a consumer "hoodwinked into purchasing a disappointing" service cannot bring a claim under the Lanham Act. Lexmark, 134 S.C.t. at 1390. Lexmark did not disturb that consensus. Id. On the contrary, the Court held that a "business misled . . . into purchasing an inferior product is, like consumers generally, not under the [Lanham] Act's aegis." Id.; see also The Knit With v. Knitting Fever, Inc., 625 F. App'x 27, 40–41 (3d Cir. 2015), cert. denied, 136 S. Ct. 1662, 194 L. Ed. 2d 768 (2016) (concluding that a business alleging lost sales arising from a mislabeled product cannot bring a claim pursuant to the Lanham Act).

Accordingly, plaintiff is not within the zone-of-interests protected by the Lanham Act's prohibition on false advertising. Plaintiff's false advertising claim pursuant to the Lanham Act is **DISMISSED**.

### 2. Violation of the CFAA

The CFAA creates several computer-based crimes. It provides, in pertinent part, that:

> Whoever . . .
>  (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . .
>   (C) information from any protected computer; . . .
>
>  (5)  (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss . . .

Shall be punished as provided in subsection (c) of this section. . . .

18 U.S.C. § 1030(a). The CFAA also created a private cause of action for, "[a]ny person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). Plaintiff alleges violations of 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(5)(A)-(C).

Plaintiff has failed to state a claim pursuant to sub-section 18 U.S.C. § 1030(a)(2) because plaintiff does not allege that defendant "obtained" information from Caspian servers in excess of defendant's authority to do so. However, accepting plaintiff's allegations as true, plaintiff has alleged all the necessary elements of a claim pursuant to 18 U.S.C. § 1030(a)(5).

To state a claim pursuant to sub-clause (a)(5)(C), plaintiff may allege that defendant (1) intentionally accessed a computer without authorization; (2) as a result of the defendant's access, the defendant impaired the integrity or availability of data; (3) the computer was used in or affecting interstate commerce; (4) defendant's access caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value. See generally Ninth Circuit Model Criminal Jury Instruction 8.102 (2010) (listing the elements of a criminal violation of 18 U.S.C. § 1030(a)(5)(C)) and 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (g) (establishing the minimum loss required to bring a civil claim).

Plaintiff alleges that the Caspian server was a computer used in or affecting interstate commerce. FAC ¶¶ 84-85. Defendant allegedly accessed the web store data on Caspian servers without authorization, id. ¶ 86, and caused injury in excess of $5,000, id. ¶¶ 52-53. Additionally, plaintiff alleges that defendant intentionally accessed Caspian servers and that, as a result of defendant's access, the availability of web store data was impaired (it was deleted). Id. ¶ 45.

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

Defendant argues that plaintiff has failed to state a claim under the CFAA because plaintiff's claim is within the scope of the exculpatory clause of the TOS and because A2 had authority to access Volk's web store data. The CFAA does not describe torts based in negligence, but rather prohibits certain intentional and knowing acts. Accordingly, defendant's first argument is without merit. Defendant's second argument presents a question of fact that is inappropriately resolved at this stage in the litigation. Plaintiff alleges that it did not give defendant authority to access its web store data on Caspian servers. FAC ¶ 86. At this stage, the Court accepts plaintiff's allegations as true.

Accordingly, defendant's motion to dismiss plaintiff's CFAA claim is **DENIED**.

### 3.    Breach of Contract

Plaintiff alleges that it entered into a "separate contract" with defendant for data migration because data migration was not a service contemplated by the TOS. FAC ¶¶ 130-133. Plaintiff alleges that the "sole purpose" of its "separate contract" with defendant was "performing data migration for the Info Site." Id. ¶ 133. Plaintiff further alleges that "[a]ny terms the Parties did not address should be supplied from the standard, default terms applicable to this type of contract." Id. ¶ 134.

As an initial matter, plaintiff has failed to allege the existence of a "separate contract" and its conclusory allegations to the contrary lack adequate substance to "provide the 'grounds' of [plaintiff's] 'entitlement to relief'." Twombly, 550 U.S. at 555. In order to state a claim for breach of contract, plaintiff "needs to allege the terms of the alleged contract that the parties agreed to, and how Defendant breached those agreed upon terms." Livonia Diagnostic Ctr., P.C. v. Neurometrix, Inc., No. 11-15208, 2012 WL 2324920, at *4 (E.D. Mich. June 19, 2012). Additionally, although "[c]ourts generally do not inquire into the adequacy of consideration to support a contract,' and even a 'cent or a peppercorn, in legal estimation,' would suffice," Federal Deposit Ins. Corp. v. Fedorov, 2010 WL 2944569, at *6 (E.D.Mich. July 22, 2010), plaintiff must nonetheless allege the existence of a contract.

Plaintiff alleges and argues that the emails it exchanged with defendant regarding the transfer of data from plaintiff's site constitute a "separate contract," to which the TOS did not apply. However, if said emails, which are incorporated into the FAC, constitute a contract outside the scope of plaintiff's original purchase of hosting services from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

defendant, plaintiff does not allege that it offered any consideration in exchange for defendant's efforts to migrate data off of Caspian servers. Nor can any consideration be reasonably inferred. Plaintiff's emails appear to request that defendant migrate data off of Caspian servers. Absent some consideration for doing so, it appears that plaintiff asked defendant to do so as a courtesy. Accordingly, plaintiff has failed to allege the existence of a separate contract for migration of its data.

Plaintiff does not allege any terms of the purported contract at issue except that its purpose was for defendant to migrate data for the Info Site. Additionally, plaintiff cites no authority under Michigan law for its contention that the terms of its alleged "separate contract" with defendant should be merely "supplied from the standard, default terms applicable to this type of contract," FAC ¶ 134, let alone what those terms should be.

Finally, the only alleged term of the "separate contract" appears to be that its "sole purpose" was "data migration for the Info Site." Id. ¶ 133. Plaintiff does not allege that defendant failed to migrate data for the Info Site. On the contrary, plaintiff alleges that defendant successfully migrated the Info Site data from Caspian servers to defendant's servers. Id. ¶ 40. Accordingly, plaintiff has failed to allege breach.

Contrary to plaintiff's argument and pleadings, the Court has already ruled that migration services are "Services" within the scope of the TOS. The TOS provides that A2 will "perform the Services in accordance with other similarly situated companies." TOS § 10. However, plaintiff disclaims any intention of alleging a violation of the TOS or the contract associated with its original purchase of hosting services. Instead, plaintiff alleges and argues that there is a separate contract to which the TOS does not apply. As noted above, plaintiff has not alleged the existence of a separate contract or breach of its terms.

Accordingly, plaintiff's claim for breach of contract is **DISMISSED**.

### 4.     Breach of Warranty

Plaintiff alleges that on March 5, 2016, defendant entered into a contract with plaintiff to migrate data and that said contract carried with it several implied warranties. As discussed above, plaintiff has failed to allege that defendant entered into a separate contract to migrate plaintiff's data. Furthermore, because migration of data is a service

Case 2:16-cv-04277-CAS-E   Document 33   Filed 12/19/16   Page 17 of 20   Page ID #:715

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

within the scope of the TOS, plaintiff's claim for breach of implied warranty is subject to the terms of the TOS, including its warranty disclaimer. Said disclaimer provides:

> THE SERVICES ARE PROVIDED ON AN AS-IS AND AS-AVAILABLE BASIS. OTHER THAN AS EXPRESSLY SET OUT HEREIN, A2 HOSTING HAS NOT, AND DOES NOT, MAKE ANY WARRANTIES WHETHER EXPRESS OR IMPLIED. THIS DISCLAIMER INCLUDES, BUT IS NOT LIMITED TO THE WARRANTIES OF NONINFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES OF MERCHANTABILITY, AND TITLE. . . .
>
> THIS WARRANTY DISCLAIMER EXTENDS TO ANY ORAL OR WRITTEN INFORMATION YOU MAY HAVE RECEIVED FROM A2 HOSTING, ITS EMPLOYEES, THIRD-PARTY VENDORS, AGENTS OR AFFILIATES. YOU MAY NOT RELY ON SUCH INFORMATION. . . .
>
> SOME STATES DO NOT ALLOW A2 HOSTING TO EXCLUDE CERTAIN WARRANTIES. IF THIS APPLIES TO YOU, YOUR WARRANTY IS LIMITED TO 90 DAYS FROM THE EFFECTIVE DATE.

TOS § 12.

Plaintiff alleges a breach of the warranty of merchantability and of fitness for a particular purpose. FAC ¶ 144. However, the TOS expressly disclaims any such implied warranties. Although instructed to brief whether any of plaintiff's claims are sufficiently alleged under Michigan law, plaintiff elected not to address its warranty claim in its supplemental briefing. Furthermore, its original opposition relies exclusively upon California law in support of its contention that the TOS "did not effectively disclaim these warranties." Opp'n at 22.

"There is no dispute that a seller may disclaim implied warranties under Michigan law as long as the disclaimer is conspicuous." Parsley v. Monaco Coach Co., 327 F.Supp.2d 797, 800 (E.D.Mich.2004). Accordingly, plaintiff's claim for breach of implied warranty is **DISMISSED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

### 5. Negligence Claims

As with plaintiff's warranty claim, plaintiff has elected not to submit any argument based in Michigan law to support its negligence claims. As already discussed, the exculpatory clause of the TOS provides an absolute defense to liability for negligence. Plaintiff's negligence based claims also appear to be barred by the economic loss doctrine. See Williams v. Scottrade, Inc., No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing negligence and negligent misrepresentation claims where the dispute was governed by contract between commercial parties).

Accordingly, plaintiff's claim for negligence (claim 8) and negligent misrepresentation (claim 10) are **DISMISSED**.

### 6. Trespass to Chattels

"Trespass to chattels is experiencing a strange afterlife as a cause of action for unauthorized intermeddling with another's computer or network." Fidlar Techs. v. LPS Real Estate Data Sols., Inc., 82 F. Supp. 3d 844, 859 (C.D. Ill. 2015), aff'd, 810 F.3d 1075 (7th Cir. 2016). In fact, "a number of courts have held that temporary electronic intrusion upon another person's computerized electronic equipment constitutes trespass to chattels." Mey v. Got Warranty, Inc., 2016 WL 3645195, at *5 (N.D.W. Va. June 30, 2016) (collecting cases). Under Michigan law, "to establish a claim for trespass to chattels, also known as trespass to personalty, a plaintiff must show a wrongful exercise of dominion or control over the plaintiff's personal property." Nieporte v. Citimorgage, Inc., No. 11-10940, 2011 WL 3032331, at *5 (E.D. Mich. July 25, 2011). Even where a contract authorizes a party to exercise *some* dominion over another's personal property, plaintiff may still bring a trespass to chattels claim where another party "confiscate[s] and/or discard[s] at will" property over which they had limited authority. Id. Additionally, "[a]n intent to intrude upon or intermeddle is an essential element of trespass to a chattel." S.D. Warren Co. v. Hydaker-Wheatlake Co., 2001 WL 753896, at *7 (Mich. Ct. App. Feb. 6, 2001).

Defendant argues that plaintiff's trespass to chattels claim must be dismissed because defendant had a contract under which it could access plaintiff's electronic data. Suppl. Reply at 6. However, as already discussed with respect to plaintiff's CFAA claim,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

plaintiff alleges that defendant did not have authority to access its web store data. Additionally, as explained above, a contract permitting limited access to and alteration of property does not necessarily permit the complete destruction of property. Plaintiff alleges that defendant exercised control over plaintiff's web store data and deleted plaintiff's valuable data without any authority to do so. Although the parties appear to have contracted around any liability for A2's potential negligence, trespass to chattels requires proof of an intent to "intrude upon or intermeddle" with plaintiff's data. It may be reasonably inferred from plaintiff's allegations that defendant allegedly intended to intrude upon or intermeddle with plaintiff's web store data. Accordingly, this claim is outside the scope of the TOS exculpatory clause.

Defendant's motion to dismiss the trespass to chattels claim is **DENIED**.

### 7. Tortious Interference with Prospective Economic Relations

To state a claim for tortious interference with prospective economic relations, plaintiff must allege that defendant took an action intending to interfere with plaintiff's prospective economic gain. Mino v. Clio Sch. Dist., 255 Mich. App. 60, 79 (2003). In other words, plaintiff must allege that defendant acted with "malice." Id. (citing BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan, 217 Mich. App. 687, 699 (1996)).

Although plaintiff alleges that defendant, "knew or should have known about the existence" of plaintiff's relationships with its clients, plaintiff does not allege that defendant deleted plaintiff's web store data with intent to interfere with plaintiff's sales. Accordingly, plaintiff's claim for tortious interference with prospective economic relations is **DISMISSED**.

### 8. Summary

Defendant's motion is **GRANTED in part** and **DENIED in part**. Defendant's motion to dismiss is **DENIED** as to plaintiff's third claim for violation of the CFAA and ninth claim for trespass to chattels. Defendant's motion to dismiss is **GRANTED** with respect to plaintiff's remaining claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04277-CAS (Ex) | Date | December 19, 2016 |
|---|---|---|---|
| Title | VOLKS USA, INC. V. A2 HOSTING, INC. | | |

    Although the Court dismisses plaintiff's claims which rely upon California statutory law, neither party has briefed whether plaintiff may properly bring any analogous statutory claims arising under Michigan statute. Accordingly, the Court finds it appropriate to grant leave to add any appropriate, and analogous, claims arising under Michigan statute. See Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (dismissing FAL, UCL, and CLRA claims, but granting leave to add claims arising under the appropriate state's laws).

    Plaintiff is granted 21 days leave in which to amend its pleadings to address the deficiencies identified herein and in which to add any claims arising under Michigan law. Plaintiff is admonished that a failure to correct the deficiencies identified herein may result in dismissal of said claims with prejudice.

## V.     CONCLUSION

    In accordance with the foregoing, defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**. Plaintiff is granted 21 days leave in which to file a Second Amended Complaint.

    IT IS SO ORDERED.

                                                                     00       19
                                      Initials of Preparer         CMJ